IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CALVIN ROBERTS                          :

                                        :

        v.                              :   Civil Action No. DKC 10-3359

                                        :

REX W. COFFEY, et al.                   :

                                        :

**MEMORANDUM OPINION**

Presently pending and ready for review in this employment discrimination case is the motion to dismiss Plaintiff's second amended complaint filed by Defendants Sheriff Rex W. Coffey, Sergeant Vincent Weaver, and Lieutenant Brian Herlihy. (ECF No. 26). The issues have been fully briefed, and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part.

**I.  Background**

**A.  Factual Background**

Plaintiff Calvin Roberts alleges the following facts in his second amended complaint. Mr. Roberts is African-American. In August 1998, he attended the Prince George's County Police Canine Basic Handler Course and subsequently joined the K-9 Unit of the Office of the Sheriff of Charles County. In October 1999, Mr. Roberts was assigned his first dog. A couple of months later, he was assigned a new dog. With this new dog, he

attended sixteen weeks of training with the Prince George's County Police Department. The training took an extended period of time to complete, in part, due to inclement weather. Sergeant Vincent Weaver, Mr. Roberts's supervisor, complained about the length of time that Mr. Roberts was in the training. In fact, Sergeant Weaver "routinely" criticized Mr. Roberts's performance (ECF No. 23 ¶ 12), despite Mr. Roberts having received numerous commendations. In general, Mr. Roberts was "competent . . . in the performance of his duties as a canine officer" and "maintained positive performance appraisals (with the exception of one negative performance appraisal . . . )." (*Id.* ¶ 10).

This negative performance appraisal concerned an incident in January 2008, in which Mr. Roberts was charged with assault and excessive use of force. The charges stemmed from Mr. Roberts's questioning of an inmate regarding whether the inmate had observed Mr. Roberts's canine partner ingesting PCP that was in the inmate's possession. As a result of the charges, Mr. Roberts was suspended without pay, demoted, and required to enroll in an anger management course.[1] In contrast, at some unspecified point, a white correctional officer named Matthew

---

[1] Mr. Roberts also alleges that he was subjected to a "Reduction in Force" (*id.* ¶ 18), but it does not appear that his employment was ever terminated.

2

Irby was also accused of excessive force but was not suspended or disciplined.[2]

Separately, Mr. Roberts pursued several training opportunities, but was prevented from taking most of them.[3] He was eligible for the training by virtue of being a canine officer and by submitting a written request. In January 2007, he applied to a training program at the Southern Maryland Criminal Justice Academy ("SMCJA") "to augment his education and become an asset to the agency." (*Id.* ¶ 16). Sergeant Weaver denied Mr. Roberts's application but allowed "similarly situated white employees . . . to attend this training." (*Id.*). In August 2008, Mr. Roberts re-applied to take the SMJCA training course but was denied due to "manpower" issues. (*Id.* ¶ 36). Again, "similarly-situated white co-workers were permitted to take the training." (*Id.* ¶ 20). In December 2008, his request to attend a canine training at the Blackwater Tactical School was denied for "budget reasons" (*id.* ¶ 37), though several white officers, including Sean Brown and Ronald Lukharde, were allowed to attend. In April 2009, Mr. Roberts made a request to take a

---

[2] The second amended complaint does not specify whether the charge against Mr. Irby was related to the events giving rise to the charges against Mr. Roberts.

[3] In addition to the sixteen-week training course at the beginning of his career, Mr. Roberts did participate in at least one other training — the North American Dog Association for Patrol Training — for which he obtained a certification.

"deep hide training" course, which was necessary to pass the "NAPWDA CDS" certification test, but Sergeant Weaver never followed-up with the request.

On September 24, 2009, Mr. Roberts met with Sheriff Rex W. Coffey.  He informed Sheriff Coffey of various difficulties he was experiencing in his job, including alleged racial discrimination and harassment under Sergeant Weaver's supervision.  On October 7, 2009, Sheriff Coffey told Mr. Roberts that an internal fact-finding investigation would be conducted.  In November 2009, Mr. Roberts filed a formal in-house EEO complaint.

Soon after Mr. Roberts filed his EEO complaint, several incidents occurred allegedly in retaliation for his reporting to the EEO.  He alleges that Defendants were aware of his filing an EEO complaint as evidenced by a "Hurt Feelings Report" that one of his supervisors, Lieutenant Brian Herlihy, sent to mock him on December 3, 2009.  On December 9, 2009, after Mr. Roberts obtained a new canine partner, Sergeant Weaver scheduled a veterinary visit only for himself and for Officer Sean Brown, though he had promised to schedule one for Mr. Roberts as well. On December 16, 2009, Lieutenant Herlihy denied a request for leave for Mr. Roberts, even though Mr. Roberts was in training school with his new canine partner.  On February 18, 2010, Lieutenant Herlihy denied a request by Mr. Roberts to work off-

4

duty security, though Lieutenant Herlihy had granted requests prior to Mr. Roberts's filing of the EEO complaint.   And on March 16, 2010, Sheriff Coffey and Lieutenant Herlihy transferred Mr. Roberts to a tactical response unit while he was waiting for a new canine assignment.[4]   Detective Eric Baker, who is white, was provided with a canine partner at this time.

### B.   Procedural Background

At some point, Mr. Roberts filed a "Complaint of Discrimination" with the Maryland Human Relations Commission. This complaint was cross-filed with the EEOC.[5]   On October 27, 2010, the EEOC issued a Right-to-Sue notice to Mr. Roberts.   On January 24, 2011, Mr. Roberts filed an amended complaint in this court asserting violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Maryland Fair Employment Practices Act ("FEPA").   (ECF No. 8).   On April 5, 2011, Defendants filed a motion to dismiss the amended complaint (ECF No. 11), which the court granted in part and denied in part in a memorandum opinion and order (ECF Nos.

---

[4] The second amended complaint also alleges generally that sometime in March 2010, Sheriff Coffey and Lieutenant Herlihy transferred Mr. Roberts to another unit but did not provide him with a canine partner.   It is unclear whether this incident is distinct from the March 16th incident described above.

[5] The amended complaint does not state the date of this EEO complaint, which is presumably the same as the November 2009 EEO complaint.

21, 22).[6]   For certain claims, the court granted Mr. Roberts leave to file a second amended complaint.   He did so on January 22, 2012.  (ECF No. 23).   This second amended complaint contains six counts:[7]   (1) discriminatory discipline under Title VII against Sheriff Coffey; (2) denial of training under Title VII against Sheriff Coffey and Sergeant Weaver; (3) retaliation under Title VII against Sheriff Coffey, Sergeant Weaver, and Lieutenant Herlihy; (4) violation of 42 U.S.C. §§ 1981 and 1983 against Sheriff Coffey in his official capacity; (5) violation of 42 U.S.C. §§ 1981 and 1983 against Sheriff Coffey, Sergeant Weaver, and Lieutenant Herlihy in their individual capacities; and (6) violation of FEPA against Sergeant Weaver and Lieutenant Herlihy in their individual capacities.

On February 28, 2012, Defendants filed the pending motion to dismiss.  (ECF No. 26).   Mr. Roberts filed an opposition on March 30, 2012.   (ECF No. 29).   On May 4, 2012, Defendants replied.  (ECF No. 32).

---

[6] This memorandum opinion can also be found at *Roberts v. Office of the Sheriff of Charles Cnty.*, No. DKC 10-3359, 2012 WL 12762 (D.Md. Jan. 3, 2012).

[7] In Counts One, Two, and Three, the second amended complaint does not specify in what capacity — individual or official — Defendants are sued.   As will be discussed, the viable claims under these counts will be construed as being brought against Defendants only in their official capacities.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, the court need not accept unsupported legal allegations.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Nor must it agree with legal conclusions couched as factual allegations,

*Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## III. Analysis

To begin, Mr. Roberts concedes that several claims should be dismissed.

First, although the second amended complaint does not specify in what capacity Defendants are being sued under Title VII, Mr. Roberts concedes that the Title VII claims in Counts Two and Three against Sergeant Weaver and Lieutenant Herlihy should be dismissed in their entirety.  (ECF No. 29-1, at 2). "[S]upervisors are not liable in their individual capacities for Title VII violations."  *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 181 (4th Cir. 1998).  Thus, Title VII claims cannot be maintained against *any* of the three Defendants in their

individual capacities — only their official capacities. But maintaining a Title VII suit against all three Defendants in their official capacities would be redundant because an official-capacity suit is tantamount to a suit against the state. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, only one Defendant need be named in his official capacity. Here, Mr. Roberts has identified that Defendant as Sheriff Coffey. (*See* ECF No. 29-1, at 2). Accordingly, the Count Two denial of training claim against Sergeant Weaver and the Count Three retaliation claims against Sergeant Weaver and Lieutenant Herlihy will be dismissed, and Counts One, Two, and Three against Sheriff Coffey will be construed as being asserted against him in his official capacity.[8]

Second, as to Count Six, the FEPA claims, which are asserted against only Sergeant Weaver and Lieutenant Herlihy in their individual capacities, Mr. Roberts concedes that those claims are foreclosed (*id.* at 8) because, like Title VII, "supervisors cannot be individually liable under the FEPA," *Brown v. Balt. Police Dep't*, No. RDB-11-00136, 2011 WL 6415366,

---

[8] The United States Court of Appeals for the Fourth Circuit has assumed, without deciding, that Title VII claims may be brought against individuals in their official capacities. *Causey v. Balog*, 162 F.3d 795, 801 n.1 (4th Cir. 1998).

at *14 (D.Md. Dec. 21, 2011).   Accordingly, Count Six in its entirety will be dismissed.

As to the remaining claims, Defendants generally contend that qualified immunity shields them from liability.   Defendants fail to recognize, however, that "qualified immunity is unavailable in official capacity suits."   *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also Franklin v. Clark*, 454 F.Supp.2d 356, 362 (D.Md. 2006) ("The qualified immunity defense does not extend . . . to claims against state actors in their official capacities." (alteration in original) (internal quotation marks omitted)).   Consequently, qualified immunity is potentially only implicated in Count Five — the only remaining count asserted against Defendants in their individual capacities — and will be discussed in full in relation to that count.

**A.   Counts One and Three:  Disparate Discipline and Retaliation Under Title VII Against Sheriff Coffey in His Official Capacity**

The court's earlier decision concerning Mr. Roberts's first amended complaint concluded that Mr. Roberts had sufficiently alleged a Title VII claim under a theory of disparate discipline and a Title VII claim for retaliation.   (ECF No. 22, at 15-16, 22-26).   The second amended complaint substantively re-alleges the same facts in support of these claims, and Defendants have not provided any convincing new reason for dismissing these

claims.[9]   Accordingly, Counts One and Three state claims for disparate discipline and retaliation, respectively.

### B.   Count Two:  Denial of Training Under Title VII Against Sheriff Coffey in His Official Capacity

In Mr. Roberts's first amended complaint, the allegations in support of a denial of training theory of Title VII liability fell short of the threshold of plausibility required to state a claim.  (ECF No. 22, at 16-19).   The second amended complaint remedies the deficiencies in pleading by adding new allegations from which a denial of training claim can be inferred.

To maintain a discriminatory denial of training claim, a plaintiff must allege that:  (1) he is a member of a protected

---

[9] Defendants' argument that the retaliation claim must be dismissed because Lieutenant Herlihy, the defendant who allegedly retaliated against Mr. Roberts, was not the specific subject of the EEO complaint constituting the protected activity is unavailing.  (See ECF No. 32, at 10).   First, "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F.Supp.2d 731, 734 (D.Md. 2006).   Thus, because this argument is raised initially in the reply, it is improperly asserted.   Second, even if it were properly raised, to plead a retaliation claim, there is no requirement that the one doing the retaliating be the subject of protected activity.  *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *see also* 42 U.S.C. § 2000e-3(a) (describing protected activity).   Rather, the one doing the retaliating need only be aware that the plaintiff engaged in protected activity.  *See Finnegan v. Dep't of Pub. Safety & Corr. Servs.*, 184 F.Supp.2d 457, 463 (D.Md. 2002).  Here, Mr. Roberts sufficiently alleges that Lieutenant Herlihy knew that Mr. Roberts had submitted an EEO complaint when Lieutenant Herlihy retaliated against Mr. Roberts.  (See ECF No. 23 ¶ 46).

class; (2) the employer provided training to its employees; (3) the plaintiff was eligible for the training; and (4) he was not provided training under circumstances giving rise to an inference of discrimination. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649-50 (4th Cir. 2002).[10] As they did with respect to the previous iteration of the complaint, Defendants take issue with the allegations in support of the fourth element. Here, at least as to the allegations related to Mr. Roberts's denial of the Blackwater Tactical School training, the fourth element is properly pleaded. The second amended complaint specifically alleges that several white employees, including Mr. Brown and Mr. Lukharde, were allowed to take the training, whereas Mr. Roberts was not. This disparate treatment in training opportunities is enough to state a claim for discrimination at this early stage of the proceedings. *See Bishop v. Bd. of Educ.*, No. DKC 11-1100, 2011 WL 2651246, at *5 (D.Md. July 5, 2011) ("In general, disparate treatment occurs when an employer simply treats some people less favorably than others because of a certain characteristic, such as race."

---

[10] "Denial of training is a type of discriminatory disparate treatment claim." *Leonard v. Tenet*, No. 1:03CV1176, 2004 WL 3688406, at *4 n.2 (E.D.Va. June 30, 2004), *aff'd sub nom. Leonard v. Goss*, 115 F.App'x 169 (4th Cir. 2004); *see also Settle v. Balt. Cnty.*, 34 F.Supp.2d 969, 999 (D.Md. 1999) (recognizing that a denial of training "could be a basis for a disparate treatment claim" (citing *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981))).

(internal quotations omitted) (citing *Jensen v. Solvay Chems., Inc.*, 625 F.3d 641, 660 (10th Cir. 2010))), *aff'd*, --- F.App'x ---, 2012 WL 503845 (4th Cir. Feb. 16, 2012).[11]  Because the other elements of the *prima facie* case are adequately pleaded,[12] the second amended complaint states a denial of training claim.

Additionally, Defendants attempt to dismiss this claim because there is "no allegation that Sheriff Coffey had knowledge or actually participated in the decision making as to the training of the Plaintiff."  (ECF No. 26-1, at 14).  As

---

[11] In the first amended complaint, Mr. Roberts attempted to state a claim for discrimination by comparing his situation to that of Lieutenant Herlihy, who was permitted to take the Blackwater Tactical School training.  In so doing, Mr. Roberts pleaded too many facts, because, as a matter of law, Lieutenant Herlihy is an inappropriate comparator.  (*See* ECF No. 22, at 18 (noting that persons holding different positions are inappropriate comparators)).  Generally speaking and contrary to Defendants' contentions, Mr. Roberts need not plead precise comparability with respect to fellow employees who were treated more favorably to survive a motion to dismiss.  *Cf. Alexander v. City of Greensboro*, 762 F.Supp.2d 764, 796 (M.D.N.C. 2011) (noting, in the context of disparate discipline, that "precise equivalence . . . between employees" is unnecessary "to plead an inferential case" (citing *Moore v. City of Charlotte, N.C.*, 754 F.2d 1100, 1107 (4th Cir. 1985))).  Here, to infer discrimination, it is enough that the second amended complaint alleges Mr. Brown and Mr. Lukharde are white and were afforded the opportunity to take the Blackwater Tactical School training while Mr. Roberts was not.

[12] In its January 3, 2012, memorandum opinion, the court expressed uncertainty as to Mr. Roberts's pleading of the third element of a *prima facie* case.  (ECF No. 22, 17 n.12).  In the second amended complaint, Mr. Roberts has added allegations explaining his eligibility for taking all trainings that he was denied.  (*See, e.g.*, ECF No. 23 ¶ 34).

noted earlier, however, this Title VII denial of training claim is necessarily asserted against Sheriff Coffey in his official capacity, which is tantamount to a suit against the state. *Will*, 491 U.S. at 71.    Therefore, Sheriff Coffey's individual involvement in the denial of Mr. Roberts's training is irrelevant to the survival of this claim.  *See Lissau*, 159 F.3d at 181 (holding that, in general, Title VII suits may only be brought against employers, not individuals).

### C.    Count Four:  § 1981 and § 1983 Against Sheriff Coffey in His Official Capacity

As discussed in the court's January 3, 2012, opinion, the framework that governs Title VII also governs § 1981 and § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) ("[T]he elements required to establish such a [circumstantial] case [of discrimination] are the same under all three statutes."); *Causey v. Balog*, 929 F.Supp. 900, 913 (D.Md. 1996) ("Plaintiff's . . . failure to establish a prima facie case under Title VII . . . is fatal to his claims under §§ 1981, 1983 and 1985(3)."), *aff'd*, 162 F.3d 795 (4th Cir. 1998). Because Mr. Roberts has sufficiently alleged Title VII claims under theories of disparate discipline and denial of training as well as a Title VII retaliation claim, he has also alleged the same sorts of claims under § 1981 and § 1983 against Sheriff Coffey in his official capacity.

Defendants argue that "to the extent that Plaintiff's [§] 1983 claims against Sheriff Coffey . . . seek anything other than prospective relief, those claims must be dismissed." (ECF No. 26-1 at 19).[13]  Indeed, the Eleventh Amendment bars § 1983 suits in federal court for monetary damages against state officials, but it does not prohibit suits for prospective injunctive relief against state officials. *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  Similar to the counts asserting the § 1981 and § 1983 claims against Sheriff Coffey in his official capacity that were set forth in the first amended complaint, Count Four here seeks only to have Mr. Roberts' "personnel file be purged," to provide "make-up training," and to enjoin "practices of the defendants found by the Court to be in violation of the law." (ECF No. 23 ¶ 59).  Because this relief appears to be directed properly towards future compliance and not compensatory relief, Defendants' argument is moot.[14]

---

[13] This argument is actually raised as to all Defendants. To the extent it was intended to be a defense as to Defendants' individual capacities, the argument is of no moment.  Section 1983 suits, regardless of the relief sought, are proper against state officials in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

[14] In their reply, Defendants raise another argument for the first time regarding the § 1981 claims against state actors, citing the Supreme Court's decision in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989). (ECF No. 32

**D.    Count Five: § 1981 and § 1983 Against Sheriff Coffey, Sergeant Weaver, and Lieutenant Herlihy in Their Individual Capacities**

As noted above, to the extent qualified immunity applies, the defense would only be implicated in Count Five. "Qualified immunity protects government officials from civil suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *LeSueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 269 (4th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The United States Supreme Court has relaxed the procedure for determining whether a defendant is entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the two-prong analysis for qualified immunity set forth in *Saucier v. Katz*, 533 U.S. 194, 200 (2001), need not be applied in a specific sequence). The United States Court of Appeals for the Fourth Circuit, however, has suggested that when qualified immunity is asserted in a motion to dismiss, "the reviewing court should usually first ask whether the right was violated on the facts alleged, and then determine whether that right was

---

at 13). The court declines to consider this argument at this time. *See Clawson*, 451 F.Supp.2d at 734. In any case, even if the § 1981 claims were found to be unmaintainable, discovery would not be affected because the analogous § 1983 claims would remain.

16

clearly established." *LeSueur-Richmond Slate Corp.*, 666 F.3d at 264. To determine "whether the right was violated on the facts alleged," the court must determine whether Mr. Roberts has stated a claim against any individual Defendants.

In general, "[i]n order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *McDonnell v. Hewitt-Angleberger*, No. WMN-11-3284, 2012 WL 1378636, at *5 (internal quotation marks omitted) (citing *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)). Similarly, "[i]ndividuals may be liable under Section 1981 when they 'authorize, direct, or participate in' a discriminatory act." *Atkins v. Winchester Homes*, No. CCB-06-278, 2007 WL 269083, at *9 (D.Md. Jan. 17, 2007).

Here, as to retaliation, the court explained in its January 3, 2012, opinion that "a § 1981 and § 1983 retaliation claim against [Lieutenant] Herlihy — but no others" was sufficiently stated. (ECF No. 22, at 28). Nothing in the second amended complaint warrants revising this conclusion.[15]

As to denial of training, the allegations constituting a valid claim involve only Sergeant Weaver. It was Sergeant

---

[15] Mr. Roberts did not reassert the retaliation claims under § 1981 and § 1983 against either Sheriff Coffey or Sergeant Weaver in their individual capacities in the second amended complaint. (*See* ECF No. 23 ¶ 62 n.7).

Weaver who denied Mr. Roberts's request to take the Blackwater Tactical School training but permitted Mr. Brown and Mr. Lukharde to attend. (ECF No. 23 ¶ 37). Thus, Mr. Roberts has properly stated a denial of training claim under § 1981 and § 1983 against Sergeant Weaver.

As to disparate discipline, the court's previous holding that "a disparate discipline claim against all individual Defendants pursuant to § 1981 and § 1983 may proceed" deserves further discussion, though the ultimate conclusion will stay intact. This holding was based mainly on the allegation that "Sheriff Coffey (acting through his agents)" had disciplined Mr. Roberts. (ECF No. 22, at 27). Taken in the light most favorable to Mr. Roberts, this fact, albeit imprecise, creates a plausible inference that some or all Defendants were responsible for the discriminatory discipline. At this early stage of the proceedings, the court is not prepared to dismiss this claim as to any Defendants; after discovery, summary judgment is a more effective tool to resolve this question of who was responsible for the disciplining of Mr. Roberts.

Defendants argue that the second amended complaint only implicates Sheriff Coffey based on a theory of supervisory liability or *respondeat superior*. (ECF No. 26-1, at 19-20). Indeed, the allegation that "Sheriff Coffey (acting through his agents)" had disciplined Mr. Roberts could imply that Sheriff

Coffey was one step removed from the actual disciplining of Mr.
Roberts.  This reading, however, would ignore the clear dictate
of *Harrison* that the facts of a complaint be construed in the
light most favorable to the plaintiff when assessing a motion to
dismiss.  176 F.3d at 783.  Even if construed in this fashion,
however, the second amended complaint also includes the
following allegation:  "Specifically, co-defendant Rex Coffey
treated Correctional Officer Irby (white) more favorably than
plaintiff (African-American) even though both were accused of
excessive force.  Unlike plaintiff, Irby did not receive a
suspension, demotion and a mandatory anger management course."
(ECF No. 23 ¶ 29).  Therefore, the second amended complaint
removes any doubt that Sheriff Coffey allegedly was personally
involved in the circumstances involving the disparate discipline
claim.[16]

In sum, pursuant to § 1981 and § 1983, Mr. Roberts has
stated a retaliation claim against Lieutenant Herlihy in his
individual capacity, a denial of training claim against Sergeant
Weaver in his individual capacity, and a disparate discipline
claim against all three Defendants in their individual
capacities.  If true, Mr. Roberts's constitutional and statutory

---

[16]  The potential inconsistency between the factual
allegations discussed above is of no concern.  "A party may
state as many separate claims . . . as it has, regardless of
consistency."  Fed.R.Civ.P. 8(d)(3).

rights were violated, and the first prong of the qualified immunity analysis would be met.   Because Defendants fail to provide *any* argument as to the second prong — whether the rights allegedly violated were clearly established — they are not entitled to the qualified immunity defense at this time.   *See Williams v. Wicomico Cnty. Bd. of Educ.*, --- F.Supp.2d ---, 2011 WL 3022300, at *5 (D.Md. July 21, 2011) (denying a motion to dismiss based on qualified immunity where, after the first prong was satisfied, the defendants did not meet their burden on the second prong); *Moxley v. Town of Walkersville*, 601 F.Supp.2d 648 (D.Md. 2009) (denying a motion to dismiss because the defendants "have not argued with any particularity" that the second prong is met).   In any event, resolution of the defense of qualified immunity is better left for the summary judgment stage, after facts supporting or negating either prong of the inquiry can be more fully developed.   *King-Fields v. Leggett*, No. ELH-11-1491, 2012 WL 203400, at *7 (D.Md. Jan. 23, 2012).[17]   Accordingly, the parties may proceed to discovery on the surviving claims.

## IV.  Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendants Sheriff Rex W. Coffey, Sergeant Vincent Weaver, and

---

[17] The Fourth Circuit has expressly noted that a defendant "is not precluded from reasserting claims of qualified immunity at the summary judgment stage." *Ridpath v. Bd. of Governers Marshall Univ.*, 447 F.3d 292, 300 n.2 (4th Cir. 2006).

Lieutenant  Brian  Herlihy  will  be  granted  in  part  and  denied  in

part.   A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge